**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DOYLE, P. J. and GOBEIL, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2018**

# In the Court of Appeals of Georgia

A18A1345. BUCHANAN v. BUCHANAN.

GOBEIL, Judge.

Joseph Buchanan, Sr. ("husband") appeals the Superior Court of Upson County's order granting Kathryn Buchanan's ("wife") motion to enforce a settlement agreement in their underlying divorce proceeding.[1] He argues that the settlement agreement is incomplete for several reasons and that the trial court erred in ruling that he and his wife had reached an enforceable settlement agreement. For the reasons set forth below, we reverse the trial court's order enforcing the settlement agreement and remand the case for further proceedings.

The parties married in 1993 and have no children. In August 2016, the wife filed a petition for divorce, requesting an equitable distribution of the property and

---

[1]We granted the husband's application for interlocutory appeal.

debts of the marriage, as well as reasonable attorney's fees. It is undisputed that the parties owned two homes in Georgia (the marital residence and a rental home property), and three homes in Florida (one titled solely in the wife's name, one titled solely in the husband's name, and one titled jointly). While the divorce action was pending, pursuant to a consent order, the parties sold their marital residence in Georgia and placed $60,000 of the proceeds into a joint account to be disbursed upon further order of the trial court.

Both parties acknowledge that they met on March 31, 2017 ("the March meeting") and discussed various matters concerning their property, and the wife took handwritten notes of the meeting, which the husband signed. While some of the handwriting is difficult to read, the document is split into two sections, with the top section appearing to represent the husband's interest and the bottom section representing the wife's interest. The husband dated and signed his name in both sections, and the wife did not sign the document. The top section lists the following: the "rental house in Ga. (appraised)" and to the upper left of this provision are the words "(if higher I get ½)" and to the upper right of this provision is the figure "30,000"; a crossed-out provision listing "½ of down payment - 30,000"; "½ of joint account," "½ of Fl rental 5,000" and what appears to be the phrase "Joe's IRA." The

2

bottom section lists the following: "keep 401K"; "Down Payment 30,000" "½ joint" with "50,000" written next to that phrase and crossed out; "IRA 30,000," which is crossed out; "FL. House"; and "Items not sold 3,400 - 1,700." Finally, at the bottom of this section is the number 3,400 on top of the number 2,500, with a line below the two numbers and the number 3,900 written below the line.

Subsequently, on April 6, 2017, the wife presented the husband with a typed document entitled "Divorce Agreement," which she maintained reduced the handwritten memorandum from the March meeting into a formal writing, but the husband refused to sign it.[2] On April 11, 2017, the husband gave the wife a check for $1,700, and he wrote in the memo of the check that it was for "Big Red-Trailer-Scrape."

---

[2]Under the terms of the document, the husband was to receive: his IRA, one-half of a joint "UBS" account, one-half of the escrow account, and the rental house in Georgia with the condition that an appraisal will be performed and an "[a]ppraisal over $30,000 will be divided equally between [husband] and [wife]." The wife was to receive: her IRA and Roth IRA accounts, one-half of a joint UBS account and the escrow account, the "UBS AX Account," and the "Florida House located at 7125 Fruitville Rd. 1256 Sarasota, Fl. 34240." Additionally, the document indicated that the husband would "pay ½ of 2017 fee for Florida House" in the amount of $4,607.50, and that the husband would pay the wife $1,700, which was half of the value of "[i]tems sold in Farm Sale, but not paid for."

Thereafter, on May 24, 2017, the wife filed a motion to enforce settlement agreement, in which she maintained that the handwritten memorandum from the March meeting constituted a settlement agreement of all the property in the divorce proceeding, and that the husband's payment of $1,700 was consideration for that agreement. In response, the husband maintained that they met to discuss reconciliation and denied that the handwritten memorandum was intended to be a settlement agreement. He explained that he paid her $1,700 because "it was the fair and right thing to do," as they had previously discussed that she would get half of the value of the farm equipment at a prior mediation. He asserted that the check only represented "her ½; it was NOT paid to her so that she would agree to the terms on the handwritten memo." He explained that he had been willing to accept the terms of the handwritten memorandum, "only if [they] reconciled," and that "[i]t was never [his] intention [for] that [to] be the final terms of our divorce."

The trial court held a hearing on October 16, 2017. At the hearing, the husband testified that, at the March meeting, the parties had discussed "money, [and] what [the wife] could have; but we did not discuss getting a divorce," and he maintained that the meeting was for the purpose of reconciliation. He acknowledged that he signed the handwritten memorandum from the March meeting. And, consistent with the

4

handwritten memorandum, he further acknowledged that they had discussed that he would "get the rental house in Thomaston;" one-half of the escrow ($30,000) from the prior sale of the marital home; one-half of the Florida rental property they owned jointly; one-half of a joint account (although he noted they had several joint accounts); and that they were each going to keep their own IRA accounts and she was going to keep her 401K. He also testified that, after the March meeting, he sold some farm equipment and paid her one-half of the proceeds ($1,700) because he "owed her the $1700."

The wife testified that the purpose of the March meeting was for her and the husband to try and reach a settlement in the divorce, and that she took notes of what they agreed upon in the meeting. She testified that they agreed that he would get the rental house in Georgia, they would split equally all joint accounts, and they each would retain the investments in their individual names. She explained that the handwritten memorandum from the March meeting had some items crossed out because as she was copying the terms into a typed document, she had marked through the handwritten memorandum. She pointed out that, after the March meeting, her husband gave her a check for $1,700 as contemplated in the handwritten memorandum. However, she acknowledged that the handwritten memorandum did

5

not discuss the husband's pension or all three of the Florida properties that had been acquired during the marriage. Further, contrary to her husband's testimony, she stated that she was to receive the Florida rental home property in full, and that the notation under the husband's list of "½ of Fl rental 5,000," actually represented half of the $10,000 annual RV park fee for the land where the rental home is situated, which the husband had agreed to cover half for 2017.

Following the hearing, the trial court entered an order finding that "the parties entered into a handwritten agreement settling *all* property issues with respect to the divorce proceeding on March 31, 2017." The court reasoned that the wife was the offeror of a settlement, and the husband accepted her offer by signing the top and bottom of the handwritten memorandum. Additionally, the court concluded that the April 6, 2017 typed document, although not signed by the husband, was valid and binding because the drafting of documents is not necessary to effectuate a settlement, and the execution of settlement documents was not necessary for the husband to accept the wife's offer. Finally, the court concluded that the husband had ratified and accepted the agreement by paying the wife $1,700 from the sale of the farm equipment as contemplated in the handwritten memorandum. The trial court certified

6

its decision for immediate appellate review, we granted the husband's application for interlocutory appeal, and this appeal followed.

In his sole enumeration of error, the husband argues that the trial court erred in concluding that he and the wife had reached a settlement agreement. Specifically, he maintains that the handwritten memorandum is unenforceable because it is incomplete as it does not address all of the items of marital property.

"We review a trial court's order on a motion to enforce a settlement agreement de novo," although we will not set aside the trial court's factual findings unless clearly erroneous. *Hart v. Hart*, 297 Ga. 709, 712-13 (777 SE2d 431) (2015). "A settlement agreement is a contract and must meet the same requirements of formation and enforceability as other contracts. Only when a meeting of the minds exists will an agreement be formed." *Lamb v. Fulton-DeKalb Hosp. Authority*, 297 Ga. App. 529, 533 (2) (677 SE2d 328) (2009) (citation and punctuation omitted); see also *Hart*, 297 Ga. at 711 ("[S]ettlement agreements in divorce cases are construed in the same manner as all other contractual agreements" with "the cardinal rule being to ascertain the intention of the parties.") (citations and punctuation omitted). "No contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced." *Moss v. Moss*, 265 Ga.

802, 803 (463 SE2d 9) (1995) (citations and punctuation omitted). While "in proper circumstances, parties may reach partial settlements as to their divorce," the "trial court errs when it seeks to enforce what amounts to a settlement containing incomplete terms of a divorce." *Rasheed v. Sarwat*, 300 Ga. 639, 640 & n.2 (797 SE2d 454) (2017).

In this case, the trial court found that the "handwritten agreement settl[ed] all property issues with respect to the divorce proceeding." We agree with the husband that the trial court erred in ruling that the handwritten memorandum was a full settlement with regard to all of the property issues between the parties. Specifically, the handwritten memorandum was incomplete with regard to the property holdings, in that it only addressed two of the three Florida homes. Additionally, although both parties agreed that the handwritten memorandum addressed the Florida rental property, it appears there is an ongoing dispute about who owns the Florida rental property based on the husband's testimony that under the handwritten memorandum the wife was supposed to receive one-half of the Florida rental property and her testimony that she was to receive the Florida rental property in full . The handwritten memorandum's reference to "½ Florida rental 5,000" in the husband's section and "Fl. House" in the wife's section does not resolve the discrepancy. The handwritten

8

memorandum also does not address who will be responsible for the mortgages on each of the four homes still owned by the parties or how any other marital debt will be apportioned. Further, at the hearing below, the husband noted that the parties have "several" joint accounts , but the handwritten memorandum refers only to a single unspecified joint account. Thus, the handwritten memorandum was incomplete as an agreement because it "requires a great deal of inferences from unspecified sources to determine who actually owns what," and how some of the property will be split between the parties. Id. at 640. Accordingly, the trial court erred in concluding that the handwritten memorandum was an agreement settling all of the property issues in the divorce proceeding.[3] Id. (holding that the trial court erred in ruling that the terms in a divorce settlement were a full settlement where the terms were incomplete and did not address all required aspects of the divorce); see also *Moss*, 265 Ga. at 803.

---

[3]The wife maintains that the husband's claim should fail because the handwritten memorandum, at a minimum, constitutes a valid and enforceable partial settlement. We agree that, "in proper circumstances, parties may reach partial settlements as to their divorce," but, as in *Rasheed*, in the case sub judice, the trial court characterized the handwritten memorandum as a full settlement of all the property issues, not a partial settlement. 300 Ga. at 640 n.2. On remand, the trial court may consider in the first instance whether the handwritten memorandum constitutes an enforceable partial settlement in this divorce proceeding.

Furthermore, the handwritten memorandum indicates that the husband is to receive the rental home in Georgia, that the home is to be appraised, and if the property is appraised at over $30,000, the parties will divide the excess amount equally. However, the handwritten memorandum does not address the method of appraisal or which party is responsible for obtaining and paying for the appraisal. Although the wife maintains on appeal that the appraisal was not an essential term of the agreement and that the parties verbally agreed that the husband would be responsible for the appraisal using whatever method he desired, she has not cited to any evidence in the record supporting this contention. Moreover, in *Moss*, the Supreme Court of Georgia held that, in a written divorce settlement agreement, the method of appraisal of real property was a substantive term of the agreement and not "merely facilitative." 265 Ga. at 803. The court further concluded that, because the evidence did not show that the method of appraisal had been agreed upon, the settlement agreement was incomplete. Id. Accordingly, as in *Moss*, the purported settlement agreement in this case was incomplete, and the trial court erred by enforcing it.[4]

_____

[4] We note that the April 6, 2017 typed document does not resolve any of the incomplete terms discussed above , and, therefore, the trial court's ruling that the typed document was valid and binding does not alter our decision. Because we

Consequently, in light of the above, we reverse the trial court's order enforcing the purported settlement agreement and remand this case to the trial court for further proceedings.[5]

*Judgment reversed and case remanded. Doyle P. J., concurs and Ellington, P. J., concurs in judgment only. *

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2(a)**.

---

conclude that the purported settlement agreement was incomplete and remand for further proceedings, we express no opinion as to whether the typed document was a valid binding agreement or whether the husband's payment of $1,700 constituted ratification of the agreement. The trial court may reconsider these issues on remand.

[5]The wife argues in the alternative that we should affirm because the husband failed to respond to the motion to enforce the settlement agreement in a timely manner, in violation of Uniform Superior Court Rule 6.2. The record shows that the wife did not raise the alleged untimeliness of the husband's response in the trial court below, and, therefore, the issue is waived. See *Pruitt v. Tyler*, 181 Ga. App. 174, 175 (1) (351 SE2d 539) (1986) (holding that an objection to the timeliness of a response "will be deemed waived unless [the objection] is itself timely raised in the trial court").